[Civ. No. 257.   Second Appellate District.—October 16, 1906.]

## A. D. WRIGHT, Appellant, v. J. C. COULES et al., Respondents.

LIBEL—INJURY TO HOTEL BUSINESS—SUFFICIENCY OF COMPLAINT.—A complaint alleging false publications by the defendants, by which parties named, who had read the published articles, were dissuaded from coming to plaintiff's hotel, and did not come at all, and would have paid the plaintiff as proprietor of the hotel, as roomers, lodgers, boarders or transients, a large sum of money, from which they would have derived a profit of $1,000, which sum is alleged and claimed as damages, states a cause of action, and is free from misleading ambiguity or uncertainty.

ID.—UNCERTAINTY AS TO DAMAGES ON THIRD COUNT—REFUSAL OF LEAVE TO AMEND—PERMISSION ON REVERSAL.—Where, in the third count of the complaint, it was alleged that by reason of the false publication charged therein, intended guests were dissuaded from coming to the hotel, and from paying plaintiff a specified sum, without specifically alleging damages in that or any other sum, a demurrer for uncertainty was properly sustained, but the court should not have sustained it without leave to amend; and although no leave was asked, this court, upon ordering a reversal of the judgment for other errors, will grant plaintiff leave to amend on the third count, by a specific allegation of damages therein.

ID.—GENERAL ALLEGATION AND PROOF OF DAMAGES—NAMES OF GUESTS NOT REQUIRED.—A general allegation to the effect that a large number of persons were dissuaded, by reason of the false publication declared upon, from making any contract with or coming to the hotel, or giving it their patronage, and from paying to plaintiff a specified aggregate sum, is sufficient upon which to base a claim for damages, if alleged, and the damages may be proved by showing the existence of facts which would naturally tend to diminish and tear down the hotel business, followed by evidence that it was actually diminished and impaired thereby, without showing the specific name or personal description of each guest who was thereby driven away from the place, or prevented from coming there.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

Tanner, Taft & Odell, for Appellant.

James P. Clark, M. M. Meyers, and M. J. McGarry, for Respondents.

GRAY, P. J.—This is an action for injury to the·plaintiff's hotel business alleged to have been caused by publications made by defendants in several newspapers. A demurrer to the amended complaint as amended was sustained and the appeal from the judgment is by plaintiff.

The questions presented relate to the sufficiency of the complaint. The amended complaint as amended purports to set out three several and distinct causes of action. In the first cause of action it is alleged in substance that plaintiff was engaged in the business of an innkeeper at the Hotel Arcadia in Santa Monica, in the county of Los Angeles, on the twenty-seventh day of August, 1904, and for that purpose had a lease of the premises extending from a date at least two years prior to said date and up to and including the date of the filing of this suit, and that such business was popular and the income therefrom was about the sum of $2,000; that at the date of the publication complained of several persons, Young, Paine, Mrs. Paine, Wilsely and Lawrence had notified the plaintiff that they were about to come to the said Hotel Arcadia and lodge or room in the said inn. It is further alleged that on said twenty-seventh day of August, 1904, the defendants maliciously and without reason caused to be published in the Los Angeles "Examiner," a public newspaper printed in the city of Los Angeles and state of California, and widely distributed, etc., among the numerous customers, boarders, lodgers and transients of said hotel, a false and injurious article. We quote from said article, as set out in the complaint, as follows:

"The famous Hotel Arcadia at Santa Monica has been purchased by the Occidental Club and will be remodeled into a colossal country club house, the largest in the world, for the use of the members and their families.

"The deal was accomplished by a double sale, O. B. Steen, an Arizona mining man, purchasing from the Pacific Improvement and transferring the property to the Angeles In-

vestment Company, the parent corporation of the Occidental Club. The price was well into six figures.

"The new owners will proceed at once to enter upon the privileges of the spacious quarters they have acquired by the sea. They do not take possession until the close of the present season, but a series of balls, planned to occur twice a week, will soon commence. In the meantime, extensive alterations and repairs will go on without interruption. . . .

"As to the new seaside home which has formerly been the aristocratic Hotel Arcadia, it is already in high favor with the members of the organization. A big bathing party will wind up with a dinner and dance is planned to take place in about two weeks."

The complaint then alleges that the said article was false in this, that the said Hotel Arcadia had not been purchased by the said Occidental Club, was not to be remodeled, and there had been no double sale by O. B. Steen, an Arizona mining man, nor had the property been purchased from the Pacific Improvement Company, nor had it been transferred to the Angeles Investment Company, nor had there been any new owners thereby placed in possession of the title, nor did they make or begin to make any extensive improvements or alterations therein. It is further alleged that the parties above specifically named read this article and that by reason thereof were dissuaded from coming to the hotel and did not come at all, and that these persons would have paid the plaintiff as proprietor of said Hotel Arcadia, as roomers, lodgers, boarders or transients, a large sum of money had they so come, from which the plaintiff would have derived a profit of $1,000, and that by reason whereof plaintiff has been damaged in the sum of $1,000.

We are clearly of the opinion that the first count of the complaint, the substance of which only is stated above, states a cause of action; that it is so free from uncertainty and ambiguity that the defendants will not be misled to their prejudice for want of any necessary allegation. If the facts as alleged are proved on the trial, we think there can be no question as to the plaintiff's right to recover the damages proven.

The second cause of action alleged is the same as the first, except that it is based upon a different publication, claimed to have been made September 15, 1904, in the "Daily Out-

look," a public newspaper printed at Santa Monica, California. The same persons as stated in the first cause of action are alleged in the second cause of action to have been kept away from the hotel by the latter publication and the same damages are alleged to have accrued. We think, also, the allegations of this cause of action are sufficient as against both the general and the numerous special demurrers.

The third cause of action is based upon the said publication in the Los Angeles "Examiner," on the twenty-seventh day of August, 1904. It also contains allegations similar to the first count of the complaint touching the ownership and conduct of the Hotel Arcadia and as to the printing and distribution of the paper containing the article; but the allegation of damage differs from that of the other two counts of the complaint. It reads as follows: "That by reason of the said publication, a large number of persons who were then and there negotiating for rooms in said Hotel Arcadia and for board and lodging, were dissuaded from making any contract in relation thereto and were dissuaded from coming to said Hotel Arcadia and from paying to plaintiff for board and lodging at least the sum of $3,000. Wherefore, plaintiff prays judgment against the defendants for the sum of $4,000 damages and for costs of suit."

It appears from the order sustaining the demurrer and judgment of dismissal of the action that the several demurrers to the third cause of action were sustained without leave to amend. We think that for the uncertainty of the allegation with reference to the damage, quoted above from the third cause of action, the demurrer was perhaps properly sustained, but are of opinion that it should not have been sustained without leave to amend. To be sure, we find no record of any request in the transcript to amend this complaint further, and ordinarily this would be a sufficient answer to the plaintiff's appeal from the judgment following the order sustaining the demurrer. But as this case must go back to the trial court for further proceedings, we deem it fair and just that the plaintiff should be permitted by the court below, on the return of the case, to amend this allegation as to his damage so as to include a specific allegation that he was damaged by the facts alleged in that count of his complaint in a specific sum, whatever that sum may be. We are of opinion that damages to a hotel business may be

proven by showing the existence of facts which would naturally tend to diminish and tear down that business followed by evidence showing that it was actually diminished and impaired thereby, and that this may be shown without showing the specific name or giving the personal description of each guest who was driven away from the place or prevented from coming there by reason of the acts complained of. A general allegation such as indicated above of people being dissuaded by reason of a publication from making any contract with or coming to the hotel, or giving it their patronage, is sufficient.

The judgment is reversed, with directions to the lower court to permit plaintiff to amend his third cause of action, as herein indicated.

Allen, J., concurred.

SMITH, J., Concurring.—I concur in the judgment and in what is said in the opinion as to the first and second causes of action set out in the complaint. I am also of the opinion that the demurrer to the third cause of action was rightly sustained for the reasons stated in the opinion.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 13, 1906.